Slip Op. 12- 29

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES and UNITED STATES INTERNATIONAL TRADE COMMISSION, <br><br> Defendants, <br><br> and <br><br> AMERICAN FURNITURE MANUFACTURERS COMMITTEE FOR LEGAL TRADE, KINCAID FURNITURE CO., INC., L. & J.G. STICKLEY, INC., SANDBERG FURNITURE MANUFACTURING COMPANY, INC., STANLEY FURNITURE COMPANY, INC., T. COPELAND AND SONS, INC., and VAUGHAN-BASSETT FURNITURE COMPANY, INC., <br><br> Defendant-Intervenors. | Before:  Gregory W. Carman, Judge <br> Timothy C. Stanceu, Judge <br> Leo M. Gordon, Judge <br><br> Consol. Court No. 07-00323 |

## OPINION AND ORDER

[Denying plaintiff's motion for an injunction pending appeal to prevent distribution of withheld funds]

Dated: March 6, 2012

*Kristin H. Mowry*, *Jeffrey S. Grimson*, *Jill A. Cramer*, *Susan L. Brooks*, and *Sarah M. Wyss*, Mowry & Grimson, PLLC, of Washington, DC and *Kevin Russell*, Goldstein & Russell, P.C., of Washington, DC for plaintiff.

*Jessica R. Toplin* and *Courtney S. McNamara*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. With them on the brief was *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*,

**Consol. Court No. 07-00323**                                                                                                         **Page 2**

Director, and *Franklin E. White, Jr.*, Assistant Director.  Of counsel on the brief was *Andrew G. Jones*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, NY.

   *Neal J. Reynolds*, Assistant General Counsel for Litigation, Office of the General Counsel, U.S. International Trade Commission, of Washington, DC, for defendant U.S. International Trade Commission.

   *Jeffrey M. Telep*, *Joseph W. Dorn*, and *Taryn K. Williams*, King & Spalding LLP, of Washington, DC, for defendant-intervenors the American Furniture Manufacturers Committee for Legal Trade, Kincaid Furniture Co., Inc., L. & J.G. Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc.

   Stanceu, Judge: In this litigation, plaintiff Ashley Furniture Industries, Inc. ("Ashley") challenged administrative decisions by two agencies, the U.S. International Trade Commission ("ITC" or the "Commission") and U.S. Customs and Border Protection ("Customs" or "CBP"), that denied it distributions of funds available under the Continued Dumping and Subsidy Offset Act of 2000 ("CDSOA"), Pub. L. No. 106-387, §§ 1001-03, 114 Stat. 1549, 1549A-72-75, 19 U.S.C. § 1675c (2000),[1] *repealed by* Deficit Reduction Act of 2005, Pub. L. 109-171, § 7601(a), 120 Stat. 4, 154 (Feb. 8, 2006; effective Oct. 1, 2007).  The ITC excluded Ashley from a list of parties eligible for status as an "affected domestic producer" ("ADP") under the CDSOA, which status potentially would have qualified Ashley for distributions of antidumping duties collected under an antidumping duty order on imports of wooden bedroom furniture from the People's Republic of China ("China").  *See, e.g.*, First Amended Compl. ¶ 31 (Feb. 9, 2011), ECF No. 50; *Notice of Amended Final Determination of Sales at Less Than Fair Value & Antidumping Duty Order: Wooden Bedroom Furniture From the People's Republic of China*,

---

   [1] Citations are to the version of the Continued Dumping and Subsidy Offset Act ("CDSOA") found at 19 U.S.C. § 1675c (2000).

**Consol. Court No. 07-00323**                                                                                         Page 3

70 Fed. Reg. 329 (Jan. 4, 2005) ("*Antidumping Duty Order*").  Based on the ITC's decision, Customs declined to provide Ashley CDSOA annual distributions for Fiscal Years 2007 through 2010.

      Plaintiff brought three similar actions, now consolidated, during the period of September 4, 2007 through March 4, 2010, raising statutory and constitutional (First Amendment, Fifth Amendment equal protection, and Fifth Amendment due process) challenges to the agency actions and the CDSOA.[2]  Compl. (Sept. 4, 2007), ECF No. 5; Compl. (Jan. 16, 2009), ECF No. 5 (Court No. 09-00025); Compl. (Mar. 4, 2010), ECF No. 3 (Court No. 10-00081).  Plaintiff's actions were opposed by defendant-intervenors American Furniture Manufacturers Committee for Legal Trade, a coalition of domestic wooden bedroom furniture producers that were eligible to receive CDSOA distributions, and Kincaid Furniture Co., Inc., L & G Stickley, Inc., Sandberg Furniture Manufacturing Company, Inc., Stanley Furniture Co., Inc., T. Copeland and Sons, Inc., and Vaughan-Bassett Furniture Company, Inc., domestic wooden bedroom furniture producers eligible to receive CDSOA distributions.  Unopposed Renewed Mot. to Intervene 2 (Feb. 2, 2011), ECF No. 41.  Ashley filed a motion for a preliminary injunction on January 11, 2012, seeking to enjoin defendants, during the pendency of this case and through all appeals and remands, from distributing to other parties Ashley's

---

    [2]  Due to the presence of common issues, the court, on February 15, 2011, consolidated plaintiff's three actions under Consol. Court No. 07-00323.  Order (Feb. 15, 2011), ECF No. 51.  Consolidated with *Ashley Furniture Industries, Inc. v. United States* under Consol. Court No. 07-00323 are *Ashley Furniture Industries, Inc. v. United States*, Court No. 09-00025 and *Ashley Furniture Industries, Inc. v. United States*, Court No. 10-00081.  Plaintiff's First Amended Complaints in each of the three actions are essentially identical but directed to CDSOA distributions for the different Fiscal Years, *i.e.*, 2007, 2008, 2009, and 2010.

potential share of CDSOA funds, which Customs temporarily is withholding from distribution. Pl.'s Mot. for Prelim. Inj. (Jan 11, 2012), ECF No. 95.

In *Ashley Furniture Industries, Inc. v. United States*, the court entered judgment dismissing plaintiff's consolidated action, concluding (1) that plaintiff's motion for a preliminary injunction, which the court construed to also be a motion for permanent equitable relief, should be denied, and (2) that plaintiff's claims must be dismissed, some for lack of standing and the remaining for failure to state a claim upon which relief can be granted. 36 CIT __, __, Slip Op. 12-14, at 4 (Jan. 31, 2012) ("*Ashley Furniture*").

Plaintiff now moves under USCIT Rule 62(c) for an injunction pending appeal of the court's January 31, 2012 opinion and judgment. Pl.'s Mot. for Inj. Pending Appeal & for Expedited Consideration 1 (Feb. 2, 2012), ECF No. 103 ("Pl.'s Mot."); Pl.'s Mem. of Points & Authorities in Supp. of its Mot. for Inj. Pending Appeal & for Expedited Consideration 1 (Feb. 2, 2012), ECF No. 103 ("Pl.'s Mem."). Plaintiff again seeks to enjoin defendants from disbursing funds Customs is withholding from distribution for Ashley "during the pendency of its appeal, including the appeal to the United States Court of Appeals for the Federal Circuit, petitions for certiorari, and any remands." Pl.'s Mem. 1. We deny plaintiff's motion.

## I. BACKGROUND

Background on this case is presented in our opinion in *Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 4-7, and is supplemented herein.

In 2005, Commerce issued an antidumping duty order on imports of wooden bedroom furniture from China. *Antidumping Duty Order*, 70 Fed. Reg. at 329. During proceedings before the ITC to determine whether such imports were causing or threatening to cause material injury

Consol. Court No. 07-00323                                                                    Page 5

to the domestic industry, Ashley responded to the ITC's questionnaires, expressing opposition to the issuance of an antidumping duty order.  First Amended Compl. ¶ 19.  Ashley did not appear as a potential ADP for the antidumping duty order on the list prepared by the ITC, as published by Customs for each of the Fiscal Years from 2007 through 2010.  *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 72 Fed. Reg. 29,582, 29,622-23 (May 29, 2007); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 73 Fed. Reg. 31,196, 31,236-37 (May 30, 2008); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 74 Fed. Reg. 25,814, 25,855-56 (May 29, 2009); *Distribution of Continued Dumping & Subsidy Offset to Affected Domestic Producers*, 75 Fed. Reg. 30,530, 30,571-72 (June 1, 2010).

  In this litigation, plaintiff challenged the ITC's decision not to include Ashley on the list of parties potentially eligible for ADP status and CBP's failure to distribute CDSOA funds to Ashley.  Plaintiff claimed these agency actions were unlawful under the CDSOA and unsupported by substantial evidence; it claimed, further, that the CDSOA violated the freedom of expression guarantee of the First Amendment, the equal protection guarantee of the Fifth Amendment, and, due to retroactivity, due process.  *Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 9-10.

  Plaintiff filed its preliminary injunction motion on January 11, 2012, seeking to restrain defendants from distributing any funds "that are currently being withheld by CBP for Ashley for FY2007-FY2010 . . . for the pendency of this litigation, including all relevant appeals and remands, until such time as a final court decision is rendered in this case."  Pl.'s Mot. for Prelim. Inj. 1.

**Consol. Court No. 07-00323**                                                                                              **Page 6**

On January 31, 2012, the court entered judgment dismissing this action. *Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 29.  We concluded that plaintiff was not entitled to injunctive relief that would delay the pending CBP distribution of CDSOA funds or to an affirmative injunction directing distribution of CDSOA benefits to Ashley. *Id*. at __, Slip Op. 12-14, at 12.  We dismissed plaintiff's statutory claims because plaintiff did not satisfy the CDSOA requirements for eligibility to receive distributions. *Id.* at __, Slip Op. 12-14, at 14-15.  We dismissed the First Amendment and Fifth Amendment equal protection claims as foreclosed by precedent of the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals"). *Id.* at __, Slip Op. 12-14, at 16-26 (citing *SKF USA, Inc. v. United States*, 556 F.3d 1360 (Fed. Cir. 2009) ("*SKF*")).  Finally, we dismissed plaintiff's retroactivity claim for lack of standing. *Id.* at __, Slip Op. 12-14, at 26-28.

On February 1, 2012, plaintiff filed its appeal.  Notice of Appeal (Feb. 1, 2012), ECF No. 101.  The next day, plaintiff filed the instant motion for an injunction pending appeal, also moving to shorten the time period for defendants and defendant-intervenors to respond to the motion.  Mot. to Shorten the Time Period to Respond to Pl.'s Mot. for Inj. Pending Appeal & for Expedited Consideration (Feb. 2, 2012), ECF No. 104.  In opposing the motion to reduce the response time, Customs indicated that the CDSOA funds withheld on behalf of Ashley will not be distributed to those parties currently designated as ADPs until on or after March 9, 2012.  Defs. United States & U.S. Customs & Border Protection's Resp. in Opp'n to Pl.'s Mot. for Expedited Consideration of its Mot. for Inj. Pending Appeal 3 (Feb. 3, 2012), ECF No. 106.  On February 7, 2012, the court denied the motion to reduce the time for defendants and defendant-

**Consol. Court No. 07-00323** Page 7

intervenors to respond. *Ashley Furniture Industries, Inc. v. United States*, 36 CIT__, __, Slip Op. 12-16, at 4 (Feb. 7, 2012).

## II. DISCUSSION

Plaintiff seeks to enjoin CBP and the ITC from making any CDSOA distributions "that are currently being withheld by CBP for Ashley for FY2007-FY2010 . . . for the pendency of its appeal, including the appeal to the United States Court of Appeals for the Federal Circuit, petitions for certiorari, and any remands." Pl.'s Mot. 1.[3]  The relief plaintiff now seeks was requested and denied in *Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 10-12.  Under the standards applicable to a post-judgment injunction, we again conclude that the requested relief is not warranted.

USCIT Rule 62(c) governs plaintiff's motion, providing that "[w]hile an appeal is pending from . . . [a] final judgment that grants, dissolves, or denies an injunction, the court may . . . grant an injunction on terms for bond or other terms that secure the opposing party's rights." Equitable relief should not be ordered if plaintiff cannot satisfy the test applicable to requests for

---

[3] Plaintiff seeks an order enjoining:
Defendants, the United States and the United States Customs and Border Protection ("CBP"), together with their delegates, officers, agents and employees, from disbursing, ordering the disbursement of, or causing disbursement of any funds, pursuant to their authority under the Continued Dumping and Subsidy Offset Act of 2000 (the "CDSOA"), 19 U.S.C. § 1675c, that are currently being withheld by CBP for Ashley for FY2007-FY2010 under case no. A-570-890 pertaining to the antidumping order against wooden bedroom furniture from China. Ashley requests that such injunction remain in place for the pendency of its appeal, including the appeal to the United States Court of Appeals for the Federal Circuit, petitions for certiorari, and any remands.
Pl.'s Mot. for Inj. Pending Appeal & for Expedited Consideration 1 (Feb. 2, 2012), ECF No. 103.

Consol. Court No. 07-00323                                                                                      Page 8

a stay of the judgment pending appeal.[4]  *See Furniture Brands Int'l, Inc. v. United States*, 36 CIT __, __, Slip Op. 12-20, at 7-8 (Feb. 17, 2012) ("[I]njunctions pending appeal demand a 'significantly higher justification' than do stays . . .") (quoting *Ohio Citizens For Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1312 (1986) (Scalia, J., in chambers)).  This test was described by the U.S. Supreme Court in 2009 as requiring a court to consider:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 129 S. Ct. 1749, 1761 (2009) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  The Court instructed that "[t]he first two factors of the traditional standard are the most critical," *id.*, and that "[it] is not enough that the chance of success on the merits be better than negligible," *id.* (internal quotations omitted).

Ashley believes it may satisfy the likelihood of success factor of the test for post-judgment injunctive relief by raising "serious, substantial, difficult and doubtful questions." Pl.'s Mem. 9 (citing *SKF USA, Inc. v. United States*, 28 CIT 170, 176, 316 F. Supp. 2d 1322, 1329 (2004)).  This permissive view of the likelihood of success factor does not square with the Supreme Court's statements in *Nken* that an applicant must have "made a strong showing that he is likely to succeed on the merits" and that "[it] is not enough that the chance of success on the merits be better than negligible."  129 S. Ct. at 1761 (internal quotations omitted).  *See Furniture Brands Int'l*, 36 CIT at __, Slip Op. 12-20, at 13-14 (rejecting arguments that standards for post-

---

[4] What plaintiff requests is not a stay, which would merely "operat[e] upon the judicial proceeding itself," but instead is an injunction that is "directed at someone, and governs that party's conduct."  *See Nken v. Holder*, 129 S. Ct. 1749, 1757-58 (2009).

Consol. Court No. 07-00323                                                                              Page 9

judgment relief are equal to standards for preliminary injunctive relief).  Plaintiff also argues that it bears a lower burden of establishing likelihood of success on the merits because the Court of Appeals has greater leeway than has this Court in construing its own precedents and because it is possible that the decision in *SKF* would be overturned or abrogated by the Court of Appeals *en banc*.  Pl.'s Mem. 10.  We reject this argument as well, concluding that the likelihood of success factor cannot be satisfied by mere speculation that the Court of Appeals will modify current law.

The court determines that plaintiff's motion does not satisfy the test in *Nken*.  Although the court presumes the irreparable injury factor to be satisfied, plaintiff has not made a strong showing that it is likely to succeed on appeal.  Ashley cannot demonstrate that our granting the injunction will not substantially injure defendant-intervenors, whose receipt of the withheld funds would be further delayed through the progress of plaintiff's appeal.  The public interest, which is served by the orderly and proper administration of the CDSOA, would not be advanced by the injunction being sought.  We address each of these factors below.

A.  Plaintiff Has Not Made a Strong Showing of Likelihood of Succeeding on the Merits of Its Appeal

We dismissed Ashley's First Amendment and equal protection claims according to the holding in *SKF*, which sustained the "petition support requirement" of the CDSOA against challenges brought on First Amendment and equal protection grounds.  *Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 15-25.  As it did prior to the court's entering judgment against it, Ashley argues that *SKF* has been invalidated or substantially undermined by several subsequent Supreme Court decisions applying the First Amendment.  Pl.'s Mem. 10-16.  We again reject this argument.

**Consol. Court No. 07-00323**                                                                                           Page 10

Plaintiff argues that in light of *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653 (2011), we should now conclude that the Court of Appeals in *SKF* misapplied the "commercial speech" test of *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557 (1980), when upholding the petition support requirement.  Pl.'s Mem. 10.  According to Ashley, the Court of Appeals failed to recognize the "substantial mismatch" between the CDSOA's "putative objective" of rewarding parties assisting government enforcement of the antidumping laws and the means chosen, which distinguished between similarly-situated parties "that provided identical practical support" and did so based only on whether a party did or did not express support for an antidumping duty petition.  *Id.* (citing *SKF*, 556 F.3d at 1352).  Calling into question the reasoning of *SKF*, plaintiff states that "the Federal Circuit believed that the statute was constitutional because Congress had a 'rational' basis for the massive underinclusiveness of the statute."  *Id.* at 10-11.  We continue to disagree with Ashley's position that *SKF* is no longer precedent controlling on the First Amendment claims plaintiff advanced in this litigation.  *See Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 21-23.

The Court of Appeals stated in *SKF* that "regulation of lawful and non-misleading commercial speech is permissible if (1) 'the asserted governmental interest is substantial,' (2) 'the regulation directly advances the governmental interest asserted,' and (3) the regulation 'is not more extensive than is necessary to serve that interest.'"  *SKF*, 556 F.3d at 1355 (quoting *Central Hudson*, 447 U.S. at 566).  We reject plaintiff's conclusion that the CDSOA, when evaluated according to the Supreme Court's holding in *Sorrell*, now should be found to violate the First Amendment because of its "massive underinclusiveness."  In the CDSOA, Congress chose to reward only petitioners and interested parties who expressed support for a petition "by

letter or through questionnaire response" rather than rewarding all domestic producers that participated as interested parties in an antidumping duty investigation, including those declining to express support for an antidumping duty petition (such as Ashley, which informed the ITC that it opposed the issuance of an antidumping duty order on wooden bedroom furniture from China). 19 U.S.C. § 1675c(d)(1); First Amended Compl. ¶ 19. We find nothing in *Sorrell* establishing a broad First Amendment principle under which the CDSOA could withstand scrutiny under the *Central Hudson* test only by rewarding all such producers.

      Plaintiff advances a contrary interpretation of *Sorrell*, viewing it to hold that "a facially discriminatory statute is invalid unless the Government can explain 'why remedies other than content-based rules would be inadequate' to fulfill its interests," and submits that the CDSOA would not be found constitutional under such an inquiry. Pl.'s Mem. 11 (quoting *Sorrell*, 131 S. Ct. at 2669). Plaintiff misconstrues the language it quotes from the Supreme Court's opinion. *Sorrell* struck down a Vermont statute that imposed content- and speaker-based restrictions on the availability and use of information obtained from pharmacies that identified prescribing physicians and had been used in the marketing of prescription drugs by pharmaceutical manufacturers. *Sorrell*, 131 S. Ct. at 2660-61. The quoted language appears in the context of the Supreme Court's explaining why the statute could not be justified by one of the purposes the State of Vermont advanced for the statute, which was a concern on the part of the State to protect doctors from harassment by representatives of pharmaceutical manufacturers. *Id.* at 2669. In refuting that position, the Supreme Court noted that the State had not explained why that particular concern could not be addressed by remedies other than the content-based restrictions of the statute in question, opining that doctors who did not want to meet with these

Consol. Court No. 07-00323                                                                                    Page 12

representatives could simply decline to do so. *Id*. at 2669. Contrary to the implied premise of plaintiff's argument, the Supreme Court, in discussing the claimed purpose of preventing such harassment, was not expanding or modifying the *Central Hudson* inquiry.

Ashley also argues that we erred in distinguishing the petition support requirement from the Vermont statute struck down by *Sorrell*, contending that in *Sorrell* "[t]he Supreme Court explained that an inference of suppressive purpose arose from the State's failure to satisfy the heightened scrutiny the Supreme Court applied, not that heightened scrutiny applied because the Court had already determined that the State had acted with a suppressive purpose." Pl.'s Mem. 12. We do not find merit in this argument. *Sorrell* neither held nor implied that a statute's purpose may be ascertained only by assessing whether the statute fails the relevant First Amendment test.

Also on the basis of *Sorrell*, Ashley argues that we failed to recognize the constitutional infirmity of the CDSOA, stating that "the relevant constitutional test does not vary depending on whether the government bans speech or merely burdens it by imposing a financial consequence for the speech." Pl.'s Mem. 12. Plaintiff also cites *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 131 S. Ct. 2806 (2011), in support of its argument, submitting "that substantial burdens on speech are subject to the same constitutional test (whatever that test might be) as an outright ban on speech." Pl.'s Mem. 13. This argument is also unconvincing. *Sorrell* concluded that the Vermont statute did not survive scrutiny under the *Central Hudson* test, the same test that *SKF* applied in upholding the CDSOA. Neither *Sorrell* nor *Arizona Free Enterprise* provides a basis for us to ignore the holding in *SKF*, which rested on a conclusion that Congress had a substantial purpose in enacting the petition support requirement and that this

Consol. Court No. 07-00323                                                                                    Page 13

purpose was not the intentional suppression of expression. *See Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 22-23 (citing *SKF*, 556 F.3d at 1351-52).

Plaintiff also cites *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), which set aside as violative of the First Amendment a jury verdict imposing substantial liability on picketers of a military funeral for state tort law claims. Ashley argues that *Snyder* establishes a "constitutional principle," under which "Ashley's opposition to the government's proposed duties constituted speech on a matter of public concern that is afforded the same degree of constitutional protection as political speech, that conflicts with a premise of the Federal Circuit's decision in *SKF*." Pl.'s Mem. 14. Ashley states in its brief that "[c]ontrary to the distinction drawn by this Court, strict scrutiny did apply in *Snyder* not because of the nature of the burden (civil liability)" but because speech on public issues is entitled to special protection. Pl.'s Mem. 14. We do not agree that *Snyder* increased the likelihood that plaintiff will succeed on appeal. The case does not hold that *all* speech addressing matters of public concern, such as a position taken in antidumping litigation, must receive a level of judicial scrutiny higher than that applied in *SKF*.

Finally, plaintiff invokes *Citizens United v. Federal Election Commission*, 130 S. Ct. 876 (2010), for the principle that "a statute that discriminates on the basis of viewpoint on issues of public concern is subject to strict scrutiny even if the speaker is a corporation." Pl.'s Mem. 14 (emphasis omitted). Ashley maintains that the Court of Appeals "transgressed" this principle "by applying a lax version of the commercial speech doctrine to a statute that would be subject to strict scrutiny as viewpoint discriminatory if applied to a private individual." *Id.* (citing *SKF*, 556 F.3d at 1361). Again, we are bound by the holding in *SKF*, and we do not consider *SKF* to have been implicitly overturned by *Citizens United*, the holding of which does not require us to

Consol. Court No. 07-00323								Page 14

apply to the CDSOA a more stringent First Amendment standard than that applied by the Court of Appeals in *SKF*.  *See Ashley Furniture*, 36 CIT at __, Slip Op. 12-14, at 18-21.

For the foregoing reasons, the court concludes that plaintiff has not shown that upon appeal it is likely to succeed on the merits of its First Amendment claims.

B.  Plaintiff Has Shown a Probability That It Would Be Irreparably Injured Absent an Injunction

As to whether plaintiff will suffer irreparable injury in the absence of an injunction, Ashley argues that denial of its motion would cause it irreparable harm in three ways.  First, it argues that were CBP to distribute to other parties what Ashley claims is Ashley's share of the withheld distributions, it would suffer "immediate and irreparable harm because recoupment under the regulations will be inadequate to make Ashley whole and, moreover, the competitive disadvantage to Ashley is irreparable."  Pl.'s Mem. 4.  Second, plaintiff argues that because its claims involve First Amendment rights, any unlawful loss of those rights, even for short periods of time, may constitute irreparable injury.  *Id*.  Third, plaintiff argues that given the track record of companies exiting the wooden bedroom furniture industry or seeking creditor protection, it will be impossible to recover disbursed funds.  *Id*. at 5.  As a result, the regulation for recoupment for overpayments to ADPs by Customs, 19 C.F.R. § 159.64(b)(3) (2011), is unlikely to be a complete remedy.  Pl.'s Mem. 5.

The court is willing to presume, based on the circumstances plaintiff identifies, that a distribution of CDSOA funds to furniture producers currently designated as ADPs is likely to prevent Ashley from receiving the funds to which it claims to be entitled.  The distribution would render uncertain the prospects of plaintiff's ever receiving those funds in their entirety.  Even though irreparable harm may not be a certainty, the court presumes, for purposes of ruling

**Consol. Court No. 07-00323**                                                                                            **Page 15**

on plaintiff's motion, the irreparable harm requirement to be satisfied by plaintiff's motion for an injunction pending appeal.

<u>C.  Plaintiff Has Not Shown that Issuance of an Injunction Would Not Substantially Injure the Other Parties Interested in the Proceeding</u>

On the question of substantial injury to the other interested parties in this proceeding, plaintiff argues that "[t]he balance of equities weighs strongly in Ashley's favor" because "[w]hereas the postponement of Defendant-Intervenor's CDSOA disbursement is at most an inconvenience, the prejudice to Ashley relating to premature CDSOA distributions is imminent and potentially permanent."  Pl.'s Mem. 6-7.

To satisfy the third factor described in *Nken*, Ashley must show that defendant-intervenors would not be substantially injured by the court's granting the requested injunction, which is more than a showing that Ashley is favored by the balance of the hardships.  The funds at issue have been withheld from defendant-intervenors for upwards of four years.  The court is not in a position to presume that further delay, even if only during the course of appellate review, would cause defendant-intervenors nothing more than insubstantial harm.

<u>D.  Plaintiff Has Not Shown that the Public Interest Will Be Served by the Injunction</u>

Ashley cites *American Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir. 2010), for the proposition that "'[t]he public interest is best served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly.'"  Pl.'s Mem. 7-8 (quoting *Am. Signature*, 598 F.3d at 830).  Plaintiff submits that granting the injunction it seeks is the best means of achieving this objective, arguing that "[t]he question of whether or not CBP's refusal to distribute CDSOA funds to Ashley is lawful remains unsettled in light of Ashley's appeal and remains so throughout the pendency of Ashley's appeal."  *Id.* at 8.

**Consol. Court No. 07-00323**                                                                                   **Page 16**

Ashley adds that, if it ultimately prevails, "unknown and immeasurable complications will arise as CBP attempts to recoup the duties from current affected domestic producers who . . . are in precarious financial states." *Id.* This attempted recoupment, according to plaintiff, "would contravene the public interest by costing tax payers untold amounts." *Id*.

We are not persuaded by plaintiff's "public interest" argument, which is grounded in a premise that the issue of whether or not CBP's refusal to distribute CDSOA funds to Ashley is lawful remains an unsettled question of law. That question is unsettled only in the sense that Ashley has appealed the judgment issued in this case. We continue to view the dismissal of Ashley's First Amendment claims as based on the precedent of *SKF*, which we consider to be binding on us. As we discussed above and in *Ashley Furniture*, plaintiff relies on Supreme Court First Amendment cases that do not implicitly overturn *SKF*. Contrary to plaintiff's position, we view *SKF* as a matter of settled law. In this respect, it cannot be said that the injunction would ensure "that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly." *Am. Signature*, 598 F.3d at 830. Plaintiff's argument concerning the cost to the taxpayer of attempting to recoup funds, which relies on the premise that the law is unsettled and will be decided in Ashley's favor, also does not convince us that the injunction being sought is in the public interest.

Rather, the public at large is best served by a lawful and orderly resolution of the issue posed by the continuing withholding of CDSOA funds. Continued delay in their distribution to those who are legally entitled to them is inimical to the public interest. Therefore, we conclude that the public interest factor does not support the grant of an injunction pending appeal.

Consol. Court No. 07-00323                                                                                          Page 17

### III. CONCLUSION AND ORDER

For purposes of ruling on Plaintiff's Motion for Injunction Pending Appeal and for Expedited Consideration, as filed on February 2, 2012, ECF No. 103 ("Plaintiff's Motion"), the court presumes that plaintiff has satisfied the irreparable harm factor. That factor, standing alone, is insufficient to justify the injunction plaintiff seeks, particularly where, as here, there has been no showing of likelihood of success on the merits of plaintiff's claims during the appellate process. Plaintiff has not satisfied the remaining two factors relevant to a determination on Plaintiff's Motion.

Upon consideration of Plaintiff's Motion, the accompanying memorandum of law, all papers and proceedings herein, and after due deliberation, it is hereby

**ORDERED** that Plaintiff's Motion be, and hereby is, DENIED.

                                                   /s/Timothy C. Stanceu
                                                  Timothy C. Stanceu
                                                  Judge

Dated: March 6, 2012
       New York, New York